**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **YOHANN JOSE FERNANDEZ,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1824-HE** |
| | ) | |
| **FRED FIGUEROA, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Yohann Jose Fernandez, a Cuban citizen proceeding *pro se*,[1] filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE"). (Doc. 1).[2] United States District Judge Joe Heaton referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). (Doc. 3). In accordance with the expedited briefing schedule, (Doc. 9), Respondents timely filed a motion to dismiss.[3] (Doc. 11). Petitioner filed a reply. (Doc. 14). As fully set forth below,

---

[1] A *pro se* litigant's pleadings are liberally construed "and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). But the court cannot serve as Petitioner's advocate, creating arguments on his behalf. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

[2] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

[3] The response was not filed on behalf of Respondent Fred Figueroa, Warden of Diamondback Correctional Facility, because he is not a federal official. (Doc. 11, at 1 n.1).

the undersigned recommends that the court **GRANT** Respondents' motion to dismiss and **DISMISS** the Petition because Petitioner's challenges to his pre-removal order detention are **moot** and any challenges to his post-removal-order detention are premature.

## I. Factual Background and Procedural History

Petitioner, who is a native and citizen of Cuba, applied for admission to the United States on October 11, 2011, at the Miami International Airport port of entry. (Doc. 11, at Ex. 2, at 1). On January 8, 2026, Petitioner was convicted of possession of a controlled substance. (*Id.* at Ex. 3, at 2). On January 29, 2026, Petitioner was transferred to ICE custody. (*Id.* at Ex. 4, at 2). The same day, ICE placed Petitioner into removal proceedings before the Immigration Court through issuance of a Notice to Appear ("NTA") charging him as removable under § 1182(a)(7)(A)(i)(I) as an immigrant not in possession of a valid travel document. (*Id.* at Ex. 1, at 1).[4] On July 3, 2026, Petitioner filed the instant Petition. *See* (Doc. 1, at 6).

---

The undersigned concludes that a separate response from Fred Figueroa is not necessary to resolve this matter.

[4] Respondents state that "[a]t the time of Petitioner's entry, he had a CP visa with an expiration date of September 10, 2014." (Doc. 11, at 2). Initially, the NTA dated January 29, 2026, had the box checked indicating that Petitioner was admitted to the United States. (Doc. 11, at Ex. 1, at 1). On February 26, 2026, ICE amended the NTA to instead designate Petitioner as "arriving alien." (Doc. 11, at Ex. 2, at 1). ICE's records indicate that Petitioner arrived on a "CP visa (PUB INTEREST PAROLEE, HDQTRS AUTH)," and the deportation officer avers that Petitioner's "parole status ended when the parole expired on September 10, 2014." (Doc. 11, at Ex. 4, at 2; Doc. 11, at Ex. 3, at 2). Thus, it is unclear if Petitioner was admitted to the United States or whether he was paroled into the United under 8 U.S.C. § 1182(d)(5)(A). However, given that Petitioner is now subject to a final order of removal and considering the recommended disposition below, it is unnecessary to resolve this discrepancy.

On July 30, 2026, an Immigration Judge ordered Petitioner removed to Cuba. (Doc. 11, at Ex. 6, at 3-4). Petitioner reserved his right to appeal, and the appeal deadline was August 31, 2026. (*Id.*) Petitioner did not file an appeal. (Doc. 11, at 7); *see also* EOIR, Automated Case Information, *at* https://acis.eoir.justice.gov/en/ (last accessed Oct. 20, 2026). Accordingly, Petitioner's order of removal is administratively final. *See* 8 C.F.R. § 1241.1(c) ("An order of removal made by the immigration judge at the conclusion of [Immigration Court proceedings] shall become final . . . upon expiration of the time allotted for an appeal if the [non-citizen] does not file an appeal within that time.").

On October 6, 2026, Respondents notified the Court that Petitioner remains in ICE custody and that DHS intends to transfer Petitioner outside of the Western District of Oklahoma "for purposes of staging and effectuating his removal from the United States." (Doc. 15, at 1).[5]

## II. Petitioner's Claims and Respondents' Responses

Liberally construed, Petitioner challenges his pre-removal-order detention without an individualized bond hearing. (Doc. 1, at 1-4). At the time he filed the Petition, Petitioner alleged that his "immigration case [was] not administratively final" and that he had "been detained approximately five months without meaningful bond review." (*Id.* at 2). Petitioner contends that his detention violates the Fifth Amendment's Due Process Clause

[5] As of the date of this Report and Recommendation, Respondents have not filed anything to indicate that Petitioner has in fact been removed, so the undersigned presumes Petitioner remains in ICE custody. In any event, the Court's jurisdiction over the Petition attached when it was filed while Petitioner was confined in this district. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).

and the Suspension Clause, and that "[a]t or near five months, detention becomes presumptively unreasonable absent extraordinary justification." (*Id.* at 1, 3-4). As relief, Petitioner requests (1) immediate release; (2) release under conditions of supervision without monetary bond; or (3) a "[p]rompt individualized bond hearing at which the Government bears the burden of proof." (*Id.* at 5).

Respondents move to dismiss, arguing that Petitioner is now subject to a final order of removal, which renders his detention mandatory under 8 U.S.C. § 1231(a)(2)(A) and moots any challenge to his pre-removal-order detention. (Doc. 11, at 1, 7-9). Respondents argue that, to the extent the Petition raises a claim under *Zadvydas v. Davis*, 533 U.S. 678 (2001), that claim is premature because Petitioner's post-removal-order detention falls within the presumptively reasonable six-month period, and Petitioner has not shown that there is no significant likelihood of his removal in the reasonably foreseeable future. (*Id.* at 10-11).

In Reply, Petitioner does not dispute that his removal order is now administratively final, and he "recognizes that *Zadvydas* identifies six months as a presumptively reasonable period in the post-removal-order detention context." (Doc. 14, at 2-4). Petitioner nonetheless asks the Court to consider the total length of his immigration detention and the fact that the Government of Cuba has declined to accept his repatriation. (*Id.* at 2-3). Petitioner also acknowledges that he "declined to sign" a document concerning his removal to Mexico, but he asserts that immigration officials have not asked him to apply for a passport or other travel document. (*Id.*) Finally, Petitioner requests that any dismissal be

without prejudice to his ability to seek habeas relief in the future should his post-removal-order detention continue. (*Id.* at 4-5).

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . challenges to the lawfulness of immigration-related detention." *Zadvydas*, 533 U.S. at 687 ; *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996). "Because mootness is a matter of jurisdiction, a court may raise the issue sua sponte." *Id.*

## IV. Petitioner is Currently Within the Statutory Removal Period and Subject to Mandatory Detention.

Prior to the entry of a final removal order, 8 U.S.C. § 1225 and § 1226 govern the detention of aliens. An alien detained under § 1226(a) is entitled to a bond hearing at which he can argue to an immigration judge that he should be released while he awaits removal proceedings because he is not a danger to others or at risk for non-appearance. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens

detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

"After the pre-removal period concludes, the statutory authority to detain an alien shifts to 8 U.S.C. § 1231." *Carbajal v. Holder*, 43 F. Supp. 3d 1184, 1188 (D. Colo. 2014). Under 8 U.S.C. § 1231(a)(2)(A), a non-citizen is subject to a 90-day removal period, where detention is mandatory. *Id.* at 1189 ("[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days . . . . During the removal period, the Attorney General shall detain the alien.") (quoting 8 U.S.C. § 1231(a)). This shift from the "pre-removal" period under § 1225 and § 1226 to the "removal" period under § 1231(a) is triggered by the latest of three events:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). A removal order becomes administratively final "upon the earlier of (i) a determination by the [BIA] affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the [BIA]." 8 U.S.C. § 1101(a)(47)(B).

Here, the latest of these three events is the date Petitioner's removal order became administratively final.[6] Thus, Petitioner's pre-removal-order period ended on August 31,

[6] Petitioner was transferred from criminal custody to ICE custody on January 29, 2026, (Doc. 11, at Ex. 4, at 2), and nothing in the record indicates that Petitioner has sought

2026, when the period for him to appeal his removal order expired. *See* 8 U.S.C. § 1101(a)(47)(B)(ii); 8 C.F.R. §§ 1003.39, 1241.1(c). Therefore, Petitioner is no longer detained under § 1225 or § 1226, but rather he is subject to § 1231(a)(2)(A), which mandates detention without bond for 90 days, or until November 29, 2026.[7]

**V. Petitioner is Not Entitled to Habeas Relief on Any of His Claims.**

**A. Petitioner's Claims Relating to His Detention Prior to His Final Order of Removal Are Moot.**

"Article III of the Constitution limits federal-court jurisdiction to 'cases' and 'controversies.'" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016) (quoting U.S. Const. art. III, § 2). "In order to invoke federal-court jurisdiction, a [petitioner] must demonstrate that he possesses a legally cognizable interest, or personal stake, in the outcome of the action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (internal quotation marks omitted). This means "an actual controversy must be extant at all stages of review." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997). "If an

judicial review of his removal order or that any court has stayed his removal. *See* 8 U.S.C. § 1231(a)(1)(B)(ii)-(iii).

[7] Respondents contend that, prior to the entry of his final order of removal, Petitioner was detained under § 1226(c), which mandates the detention of certain non-citizens with criminal convictions. (Doc. 11, at 9); *see* 8 U.S.C. § 1226(c)(1); *Demore v. Kim*, 538 U.S. 510, 513 (2003). The undersigned need not determine which statute governed Petitioner's pre-removal-order detention because that period of detention has ended, and Petitioner is now detained under § 1231. Further, Petitioner asks that, should Respondents contend his removal period has been extended under 8 U.S.C. § 1231(a)(1)(C) based on his refusal to sign a document concerning his removal to Mexico, the Court require an adequate factual record on that issue. (Doc. 14, at 3). Respondents have not made that argument, and the undersigned does not address it.

intervening circumstance deprives the [petitioner] of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp.*, 569 U.S. at 72 (internal quotation marks omitted). "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted).

Prior to his removal order becoming final, Petitioner claimed that his detention violated his due process rights and he sought release from custody. (Doc. 1, at 1-5). However, because he is now detained pursuant to § 1231(a)(2)(A), Petitioner is subject to mandatory detention, and he is not entitled to release. Accordingly, his claims should be dismissed as moot. *See, e.g., Quintanilla v. Figueroa*, No. CIV-26-797-G, 2026 WL 2302459, at *1 (W.D. Okla. Aug. 10, 2026) (dismissing as moot a similar petition where petitioner's order of removal became final after the petition was filed); *Singh v. Mullin*, No. CIV-26-556-D, 2026 WL 2058953, at *1 (W.D. Okla. July 16, 2026) (agreeing with magistrate judge that the Petition is moot when petitioner's BIA appeal was dismissed, making his order of removal final); *Maldonado-Velasquez v. Moniz*, No. 17-1918, 2018 WL 11444979, at *1 (1st Cir. Mar. 22, 2018) ("Because Maldonado-Velasquez's order of removal is administratively final, 8 C.F.R. § 1241.1, and because the court has denied a stay of removal in his parallel petition for review proceedings, Maldonado-Velasquez is no longer being detained pursuant to the statute at the heart of his due process claim, 8 U.S.C. § 1226. *See* 8 U.S.C. § 1231(a)(1). The shift in detention authority has rendered Maldonado-Velasquez's due process claim moot."); *Carbajal*, 43 F. Supp. 3d at 1189

(collecting cases, and stating "[a]pplicant's claims challenging his mandatory detention without an individualized bond hearing during the pre-removal period now are moot because the Board of Immigration Appeals dismissed his administrative appeal on December 27, 2013, thereby affirming the order of removal").[8]

### B. To the Extent Petitioner Raises a *Zadvydas* Claim, That Claim is Premature.[9]

Petitioner also seeks immediate release. (Doc. 1, at 5). In some circumstances, a court can order release once a non-citizen's 90-day removal period has ended, if the non-citizen has not been removed. *Zadvydas*, 533 U.S. at 682, 687-88.

> There is no express limitation on the length of an alien's post-removal-period detention under § 1231(a)(6). But in *Zadvydas*, the Supreme Court interpreted § 1231(a)(6) narrowly and imposed an implicit reasonable time limitation on such detention to avoid any Fifth Amendment due process issues that could arise from indefinite detention. After *Zadvydas*, an alien can be detained only until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

---

[8] A court cannot "dismiss a petition as moot if (1) secondary or collateral injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; [or] (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time." *Riley v. INS*, 310 F.3d 1253, 1257 (10th Cir. 2002) (internal quotation marks omitted). "However, none of these exceptions apply to [Petitioner], who has no reasonable expectation that he will once again be detained" without a final order of removal. *Carbajal*, 43 F. Supp. 3d at 1190.

[9] Petitioner remains within the 90-day removal period, which does not end until November 29, 2026, and his detention is mandatory during that period. *See* 8 U.S.C. § 1231(a)(2)(A). *Zadvydas* addresses detention *after* the removal period ends, under § 1231(a)(6). *See Zadvydas*, 533 U.S. at 682, 701. Strictly speaking, then, *Zadvydas* does not yet apply to Petitioner's detention. But the removal period may end before the District Judge rules on this Report and Recommendation, given the objection deadline and the time allowed for responses to any objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). So the undersigned addresses whether Petitioner has stated a claim for relief under *Zadvydas*.

*Babakhani v. Gantt*, No. CIV-26-705-SLP, 2026 WL 1822995, at *3 (W.D. Okla. June 24, 2026) (internal quotation marks and citations omitted).

Here, Petitioner's detention has not extended beyond the presumptively reasonable six-month period set in *Zadvydas*. Petitioner concedes as much, acknowledging that he does not ask the Court to "treat his entire period of immigration detention as six months of post-final-order detention." (Doc. 14, at 3). Any *Zadvydas* claim is therefore premature.

Petitioner has also failed to meet the *Zadvydas* requirement to establish "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Petitioner points to the Government of Cuba's refusal to accept his repatriation. (Doc. 14, at 2-3). But the record reflects that ICE has offered Petitioner removal to a third country, Mexico, and Respondents have since notified the Court that DHS is preparing to move Petitioner "for purposes of staging and effectuating his removal from the United States." (Doc. 15, at 1). Petitioner has not alleged any institutional barriers to his removal to Mexico; nor has he shown any obstacles particular to his circumstances that would prevent or delay that removal. *See, e.g.*, *Abiodun v. Mukasey*, 264 F. App'x 726, 729 (10th Cir. 2008) (finding a petitioner was not entitled to relief because there had been "no showing" he would "not be accepted by his homeland of Nigeria"). Accordingly, even to the extent the Petition could be construed to seek release under *Zadvydas*, Petitioner has failed to show there is no significant likelihood of his removal in the reasonably foreseeable future.

## VI. Recommended Ruling and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that Respondents' Motion to Dismiss (Doc. 11) be **GRANTED** and that the Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 1) be **DISMISSED as moot. The court advises the parties of their right to object to this Report and Recommendation by November 3, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The Court further advises the parties that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 20th day of October, 2026.

Amanda L. Maxfield
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE